■ GRAUBARD MOLLEN HOROWITZ POMERANZ & SHAPIRO, Appellant, v 600 THIRD AVENUE ASSOCIATES, Respondent. [675 NYS2d 599] —Order and judgment (one paper), Supreme Court, New York County (Elliott Wilk, J.), entered June 12, 1997, insofar as it awarded defendant landlord the sum of $526,650.68 in interest on escrowed rent payments, reversed, on the law, to the extent appealed from as limited by the briefs, without costs, the interest award vacated, and the matter remanded to Supreme Court for a computation of the interest due.

In connection with plaintiff's application for a *Yellowstone* injunction, the parties established a joint escrow account in which disputed rent was deposited pursuant to court order.

Upon granting partial summary judgment in favor of defendant landlord, Supreme Court held that defendant was entitled to interest on the escrowed funds at the statutory rate of 9 percent per annum, as provided in the subject lease for late rent payments. On appeal, plaintiff argues that its liability is fixed by the order, which directed that the funds be placed in an interest-bearing account, and that defendant landlord is therefore limited to the interest actually paid on the deposited funds for the duration of the *Yellowstone* injunction.

While landlord is correct in its assertion that the limited purpose of a *Yellowstone* injunction is to preserve the status quo by tolling the period within which a breach of a material condition of the lease must be cured, it is incorrect in its conclusion that the lease provision automatically entitles it to collect interest at the statutory rate for the time during which the injunction was in effect. The purpose of a *Yellowstone* injunction is to avoid forfeiture of the leasehold by tolling the period during which the tenant must cure a default, thus avoiding termination of the lease according to its terms (*First Natl. Stores v Yellowstone Shopping Ctr.*, 21 NY2d 630, 637; *Post v 120 E. End Ave. Corp.*, 62 NY2d 19, 26). Its purpose is to preserve the status quo until such time as the rights of the parties can be adjudicated (*Wilen v Harridge House Assocs.*, 94 AD2d 123, 127). In the exercise of its equitable powers, the court is vested with considerable discretion in placing conditions upon the grant of the injunction (*e.g., Physicians Planning Serv. Corp. v 292 Estates*, 88 AD2d 852 [tender of rent as it becomes due]; *Wuertz v Cowne*, 65 AD2d 528 [undertaking in the amount of $100]). The obligations of the parties are therefore determined by reference to the order granting injunctive relief. Furthermore, it is well within the discretion of the court to modify its order to accommodate a change in circumstances, as the parties are well aware (*see*, 234 AD2d 49, *lv dismissed* 89 NY2d 1086).

It is undisputed that the order directing the deposit of rent provides for deposit of accrued rent in a joint, interest-bearing escrow account and was later modified to provide for payment of 75 percent of accrued rent directly to the landlord (*supra*). Given the purpose of the *Yellowstone* injunction in preserving the status quo by preventing a default under the lease, it is hardly logical for landlord to assert that plaintiff tenant was in default in the payment of rent during the entire period the injunction was in effect. Implicit in landlord's position is that tenant was in violation of not only the lease but also the court's order and, thereby, in default of a condition of the stay. However, it would

appear that the payments required as a condition of the injunction were timely made, landlord's primary complaint being that the payments were held in escrow and not received directly for its benefit.

As for the express terms of the provision relied upon by landlord, the lease obligates the tenant for interest at the statutory rate on monies "paid more than ten (10) days after the date such monies are payable pursuant to the provisions of this Lease". It need only be observed that the rent deposits at issue were paid by tenant pursuant to the terms of the court order, not the lease, and the lease provision is simply inapposite. In this regard, it should be noted that a *Yellowstone* injunction supersedes the lease for the purpose of preventing termination on account of default. Secondly, as noted above, tenant made timely payments as required under the lease; it simply made them to the escrow account provided for in the court order and not directly to defendant. Finally, if defendant landlord had any objection to the terms of the order, landlord was obliged to make prompt application to the court for relief (CPLR 5015) and not surprise the tenant with a belated demand for interest extending over a period of several years. Concur—Rubin, Williams, Tom and Saxe, JJ.

Rosenberger, J. P., dissents in a memorandum as follows: I dissent and would affirm the order on appeal. I do not share the majority's view that plaintiff ceased to be in default as soon as it began paying rent into the escrow account pursuant to the *Yellowstone* injunction. Nor did the lease provision concerning the interest payable upon default become inapplicable when the injunction went into effect.

The limited purpose of a *Yellowstone* injunction is to maintain the status quo so that the tenant will not be evicted during the pendency of its legal challenge to the landlord's determination that the tenant is in default (*Lexington Ave. & 42nd St. Corp. v 380 Lexchamp Operating*, 205 AD2d 421, 423). In contrast to the usual preliminary injunction, which requires a showing of likelihood of success on the merits, a *Yellowstone* injunction will be granted to any commercial tenant who receives a notice to cure, seeks injunctive relief before the cure period ends and demonstrates that the tenant is willing and able to cure if it ultimately is found that such cure is necessary (*Garland v Titan W. Assocs.*, 147 AD2d 304, 307-308).

*Yellowstone* relief requires a lesser standard of proof than a standard preliminary injunction because the remedy is a limited one. The *Yellowstone* injunction merely tolls the period within which the tenant may cure its default (*supra,* at 307). It

is only what it says it is. It is an injunction. It is not a declaration of status or of rights.

The opinion of the Court of Appeals in *Waldbaum, Inc. v Fifth Ave. of Long Is. Realty Assocs.* (85 NY2d 600) undermines the majority's reasoning. The lease gave the commercial tenant a right to renew, but only if it was not in default at the time it exercised this option. The tenant allegedly breached certain lease obligations and obtained a *Yellowstone* injunction to protect itself from eviction while the issue was being litigated. The tenant, meanwhile, tried to cure the alleged breaches. The Court of Appeals held that during this period the tenant could not exercise its renewal option. While the *Yellowstone* injunction had stayed the landlord's exercise of the eviction remedy, "[t]he injunction could not, in and of itself, relieve plaintiff of the necessity of complying with the condition precedent * * * that plaintiff not be in default" (*supra,* at 606).

Given this distinction, it is clear that the tenant in the case at bar was still in default while the injunction was in effect. Thus, the injunction did not supersede the lease provision calling for nine percent interest on rent arrears in the event of a default in rent payments (*see, Titleserv, Inc. v Zenobio,* 210 AD2d 311, 313 [*Yellowstone* injunction prevented landlord from evicting tenant for non-payment of rent, but not from drawing upon letter of credit]). This type of injunction is "limited to the prevention of a specific irreparable harm" of eviction (*supra,* at 313) and should not suspend the landlord's right to resort to monetary remedies permitted by the lease. Accordingly, I would affirm the order and judgment.