*510
 
 OPINION OF THE COURT
 

 Wesley, J.
 

 This appeal, which arises from a protracted landlord-tenant dispute, asks us to re-examine the nature, scope and effect of a
 
 Yellowstone
 
 injunction. Plaintiff is a law firm located in New York City. The firm’s predecessor entered into a commercial lease in July 1984 with defendant (Associates), the owner of a building located at 600 Third Avenue in Manhattan. Paragraph 45 of the lease states:
 

 “If any monies owing by Tenant under this Lease are paid more than ten (10) days after the date such monies are payable pursuant to the provisions of this Lease, Tenant shall pay Landlord interest thereon, at the then maximum legal rate, for the period from the date such monies were payable to the date such monies are paid.”
 

 The parties modified several provisions of the lease in January 1992 to provide for an adjustment in rent. The firm ad
 
 *511
 
 ditionally negotiated a provision to the effect that neither it nor any of its individual partners could be held liable to Associates for any money judgment obtained against the firm in connection with its tenancy. Concomitantly, the parties added a lease provision that requires the firm to maintain a letter of credit in the amount of $1,000,000 and to replenish the letter of credit when necessary.
 

 Associates undertook an elevator renovation project in 1992. In March 1993 the firm began to withhold its monthly rent because of the alleged failure of Associates to repair and maintain the building elevators. The firm contended that the elevator service restricted its access to the building and that it was therefore partially evicted from its space.
 

 Associates satisfied the firm’s rent obligations by drawing on the $1,000,000 letter of credit on November 19,1993, and again on February 18, 1994. Despite the lease provision requiring the firm to maintain the $1,000,000 security balance and Associate’s notification to the firm of this obligation, it failed to do so. By Notice to Cure dated February 24, 1994, Associates advised the firm that it was in default of its leasehold obligations by failing to maintain the required security.
 

 Shortly thereafter the firm commenced an action in Supreme Court and sought a declaration that its obligation to pay rent was suspended due to the partial eviction, and that by drawing down on the letter of credit Associates had exhausted its remedies under the lease. Associates answered and interposed several counterclaims. Associates contended that the firm was, and continued to be, obligated to pay rent under the terms of the amended lease and that interest accrued on late rent payments pursuant to the lease.
 

 The firm simultaneously made a motion for a
 
 Yellowstone
 
 injunction. During oral argument on the motion, the court explored with counsel the problems associated with issuing a
 
 Yellowstone
 
 injunction, the firm’s obligation to pay rent under the lease and Associates’ entitlement to interest on late rent payments. Counsel for Associates also expressed concern about the prospect of a long and drawn out lawsuit during which his client would not receive any rent. The court ultimately granted the
 
 Yellowstone
 
 injunction, directed that the firm deposit its accrued arrears in a jointly held escrow account and ordered that the firm deposit monthly a sum equal to the rent into the account.
 

 For the next two years Associates received no rental payments from the firm; the escrow account grew to more than
 
 *512
 
 $3,000,000. In May 1996 Supreme Court ordered the firm to pay Associates 75% of the rent invoiced for May 1996 and to deposit the remainder in the escrow account. In July 1996 the court ordered the same payments for June and prospectively throughout the course of the litigation. The court also directed that $109,000 be released to Associates from the escrow account for June 1996 and each successive calendar month while the case was litigated.
 

 The firm appealed to the Appellate Division, arguing that Associates could not receive any rental payment during the litigation due to “an open court stipulation.” The Appellate Division rejected that argument, holding that Supreme Court properly exercised its discretion in modifying a condition upon which plaintiff was granted a
 
 Yellowstone
 
 injunction
 
 (Graubard Mollen Horowitz Pomeranz & Shapiro v 600 Third Ave. Assocs.,
 
 234 AD2d 49). The firm’s attempt to appeal that decision to this Court was dismissed as nonfinal
 
 (Graubard Mollen Horowitz Pomeranz & Shapiro v 600 Third Ave.
 
 Assocs., 89 NY2d 1086).
 

 In July 1996, in response to another motion by the firm, Associates cross-moved for summary judgment dismissing several causes of action in the amended complaint. Supreme Court dismissed the firm’s partial eviction claim and held that it was required to replenish the letter of credit. The court noted that Associates was justified in drawing on the letter of credit due to the firm’s failure to make timely rental payments. The firm again appealed, and the Appellate Division again affirmed, noting that “plaintiff’s obligation to pay rent was never suspended”
 
 (Graubard Mollen Horowitz Pomeranz & Shapiro v 600 Third Ave. Assocs.,
 
 240 AD2d 161).
 

 While that appeal was pending before the Appellate Division, Associates moved in Supreme Court for summary judgment on several of its counterclaims, for vacatur of the
 
 Yellowstone
 
 injunction, and for release of the escrow account. At that time, the outstanding rental arrears through October 31, 1996 totaled $3,213,661.60 and interest due under paragraph 45 of the lease totaled $514,947.62.
 
 [1]
 
 Associates argued that once the issue of the default was fully litigated and decided adversely to the firm, the
 
 Yellowstone
 
 injunction was no longer necessary. Associates took the position that the firm risked the conse
 
 *513
 
 quences of the applicable lease clause (and mandated statutory provisions for an award of interest) by making a purposeful decision to withhold rent payments. The firm countered that its liability was limited to the undertaking required by the court as a condition of the injunction.
 

 The trial court rejected the firm’s arguments. It concluded that since the parties had litigated the propriety of the Notice to Cure, there was no basis to continue the
 
 Yellowstone
 
 injunction and granted Associates’ requested relief — both rent and interest owed under the lease.
 

 The firm appealed to the Appellate Division, solely on the issue of interest. The Appellate Division, with one Justice dissenting, reversed the order and vacated the award of interest granted by Supreme Court (252 AD2d 453). The majority determined that the
 
 Yellowstone
 
 escrow condition nullified the lease provision requiring the timely payment of rent and its consequences. The dissenting Justice concluded that the majority misapplied the
 
 Yellowstone
 
 doctrine and improperly deprived Associates of monetary damages provided to it by the lease in the event of default.
 

 Associates moved before the Appellate Division for reargument and/or for leave to appeal to this Court. The Appellate Division denied reargument, but certified the following question to this Court: “Was the order * * * which reversed the order and judgment * * * of the Supreme Court, properly made?” We answer that in the negative, and reverse the order below.
 

 Analysis
 

 In order to properly understand the nature and scope of a
 
 Yellowstone
 
 injunction we revisit the decision that gave it life.
 
 First Natl. Stores v Yellowstone Shopping Ctr.
 
 (21 NY2d 630) involved a controversy between a landlord and a commercial tenant over who was to bear the expense of a sprinkler system required by the New York City Fire Department. The landlord contended that the cost properly belonged to the tenant. When the tenant did not comply with the Fire Department order, the landlord gave the tenant written notice to cure pursuant to the lease. On the last day of the cure period the tenant commenced an action for a declaratory judgment, but did not obtain a temporary restraining order. Thus the lease terminated long before the dispute was resolved. This Court held that it was powerless to revive the expired lease under the circumstances presented
 
 (see generally, First Natl. Stores v Yellowstone Shopping Ctr.,
 
 21 NY2d 630;
 
 Post v 120 E. End Ave. Corp.,
 
 62 NY2d 19, 24-25).
 

 
 *514
 
 While seemingly unremarkable, the
 
 Yellowstone
 
 case ushered in a new era of commercial landlord-tenant law in New York State. As a result of this decision, tenants developed the practice of obtaining a stay of the cure period before it expired to preserve the lease until the merits of the dispute could be resolved in court
 
 (Post v 120 E. End Ave. Corp., supra,
 
 at 25). These injunctions have become commonplace, with courts granting them routinely to avoid forfeiture of the tenant’s substantial interest in the leasehold premises
 
 (id.). Yellowstone
 
 gave rise to a creative remedy for tenants when confronted with a tangible threat of lease termination.
 

 A
 
 Yellowstone
 
 injunction maintains the status quo so that a commercial tenant, when confronted by a threat of termination of its lease, may protect its investment in the leasehold by obtaining a stay tolling the cure period so that upon an adverse determination on the merits the tenant may cure the default and avoid a forfeiture. The party requesting a
 
 Yellowstone
 
 injunction must demonstrate that:
 

 “(1) it holds a commercial lease; (2) it received from the landlord either a notice of default, a notice to cure, or a threat of termination of the lease; (3) it requested injunctive relief prior to the termination of the lease; and (4) it is prepared and maintains the ability to cure the alleged default by any means short of vacating the premises”
 
 (225 E. 36th St. Garage Corp. v 221 E. 36th Owners Corp.,
 
 211 AD2d 420, 421).
 

 These standards reflect and reinforce the limited purpose of a
 
 Yellowstone
 
 injunction: to stop the running of the applicable cure period
 
 (Post v 120 E. End Ave. Corp., supra,
 
 at 25).
 

 The firm contends (and the Appellate Division majority apparently agreed) that the rent deposits at issue were paid by the tenant pursuant to the terms of the court order, not the lease, and therefore the lease provision is inapposite. That argument misses the point. Contrary to the firm’s characterization of the escrow fund, a monthly sum
 
 equal to
 
 all rent due under the lease was deposited. Rental payments were not made and Associates was denied the use of the money for over two years.
 

 In
 
 Waldbaum, Inc. v Fifth Ave. of Long Is. Realty Assocs.
 
 (85 NY2d 600), we examined the nature of the parties’ rights under a
 
 Yellowstone
 
 injunction. We reiterated that a
 
 Yellowstone
 
 injunction stays only the landlord’s termination of a leasehold
 
 *515
 
 while the propriety of the underlying default is litigated. Significantly, a
 
 Yellowstone
 
 injunction does not nullify the remedies to which a landlord is otherwise entitled under the parties’ contract:
 

 “The
 
 Yellowstone
 
 injunction only served to forestall defendant from prematurely canceling the lease during its initial term * * * The injunction could not, in and of itself, relieve plaintiff of the necessity of complying with the condition precedent to renewal set forth in the lease” (85 NY2d, at 606).
 

 Waldbaum
 
 clearly indicates that the firm
 
 always
 
 was obligated to comply with the provisions of the lease, despite the court order. Conditions placed upon the grant of a
 
 Yellowstone
 
 injunction do not, contrary to the Appellate Division’s reasoning, alter the rights and obligations of the parties.
 
 [2]
 
 The point of reference for defining the rights of the parties is not the court order; rather, it is the lease itself. The
 
 Yellowstone
 
 injunction at issue here did not supersede the lease provision calling for interest on rent arrears in the event of a default. The
 
 Yellowstone
 
 injunction protected the firm from eviction; it did not rewrite the lease.
 

 Although
 
 Yellowstone
 
 injunctions historically have been used to protect tenants from eviction, they provide a modicum of protection to landlords as well. The escrow account was simply a condition of the
 
 Yellowstone
 
 injunction, much like a bond, to ensure that Associates was paid when the day of reckoning finally arrived in this protracted litigation. A condition imposed along with a
 
 Yellowstone
 
 injunction has no bearing on the underlying rights of the parties.
 

 The firm’s reliance on
 
 City of Yonkers v Federal Sugar Ref. Co.
 
 (221 NY 206) is misplaced. In that case the Court held that damages caused by an improvidently granted preliminary injunction are limited to the amount of the undertaking. The plaintiff had sought a preliminary injunction to enjoin a public nuisance. Its liability for injury caused by the preliminary injunction was limited to “such damages, not exceeding a sum, specified in the undertaking” pursuant to section 620 of the former Code of Civil Procedure. In this case, there is no statutory mandate limiting Associates’ recovery. Moreover, the dam
 
 *516
 
 ages in
 
 Yonkers
 
 resulted from the issuance of the injunction, while here, the monies owed to Associates arise out of nonpayment of accrued rent.
 

 Fairness dictates that Associates receive the interest due under the terms of the lease. To rule otherwise would place Associates in an unenviable position. Though victorious in this litigation, it would nevertheless suffer a substantial monetary loss. In addition to not receiving rental monies to which it was entitled for almost two years, Associates would forfeit interest due under the terms of the lease. Equity takes a dim view of such a result. When Associates prevailed, it was entitled to interest as agreed to by the parties in their lease.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, the order of Supreme Court, New York County, reinstated and the certified question answered in the negative.
 

 Judges Smith, Levine, Ciparick and Rosenblatt concur; Chief Judge Kaye and Judge Bellacosa taking no part.
 

 Order reversed, etc.
 

 [1]
 

 . Interest grew to $526,650.68 by the time of entry of the order and judgment of the Supreme Court. The parties do not dispute the amount of arrears or interest due on arrears under the lease.
 

 [2]
 

 . Indeed, the Appellate Division recognized that “plaintiffs obligation to pay rent was never suspended” by the
 
 Yellowstone
 
 injunction in the firm’s second appeal
 
 (Graubard Mollen Horowitz Pomeranz & Shapiro v 600 Third Ave. Assocs.,
 
 240 AD2d 161,
 
 supra).