**BROAD FINANCIAL CENTER LLC, Plaintiff,**

v.

**NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC., Defendant.**

**No. 01 CIV 11863(MBM).**

United States District Court, S.D. New York.

Feb. 21, 2002.

Carol Wallis Duffy, Stephen J. Fallis, Carb Luria Cook & Kufeld, New York, NY, for Plaintiff.

Christopher R. Gette, Skadden Arps Slate Meagher & Flom, New York, NY, for Defendant.

OPINION AND ORDER

MUKASEY, District Judge.

Defendant National Association of Securities Dealers, Inc. ("NASD") is the lessee of several floors at 33 Whitehall Street, in Manhattan. By order entered October 30, 2001, this Court condemned three of those floors for use by the government to meet emergency needs created by devastation resulting from the September 11, 2001 attack on this country. Plaintiff is the lessor of the subject space. Because the condemned space constituted more than 25% of the NASD's leased space in the building, the NASD took the position that it was permitted to terminate the lease, and gave notice to that effect. The NASD moved out of the building as of January 2002. A principal underlying issue in the instant case is whether the NASD was entitled to terminate the lease, or whether it remains liable for rent on the demised premises.

Plaintiff Broad Financial Center LLC ("Broad Financial"), the lessor, is now in negotiation with the Equal Employment Opportunity Commission ("EEOC") to lease certain of the floors vacated by the NASD, and has served a notice of termination of the lease for non-payment of rent. Broad Financial takes the position that it must terminate the NASD lease so that it can lease the vacant space to the EEOC, and argues that such a lease can only help the NASD by mitigating the NASD's potential damages for rent on space it is not, in any event, using.

The case is now before the court on the NASD's application for what is referred to in New York landlord/tenant parlance as a *Yellowstone* injunction to stay the tolling

of the cure period under the lease, and to block the effectiveness of Broad Financial's termination notice.

Thus, the parties are in the following anomalous position: Broad Financial opposes the NASD's claim that it properly terminated the lease as the result of the condemnation, but seeks to terminate the lease now for non-payment of rent. The NASD takes the position that it properly terminated the lease as the result of the condemnation, but opposes Broad Financial's attempt to terminate the lease now for non-payment of rent. The NASD concedes that it has vacated the space and that it is impractical for the NASD to move back in if it loses the underlying litigation. Although the NASD asserts that it could sublet the space in that event, or find other uses for it, the underlying lease runs only until February 28, 2003. Obviously, what has happened is that the condemnation set off negotiation between the parties, and maneuvering for position, of which the current motion is a part.

A *Yellowstone* injunction, the eponymous fruit of *First National Stores, Inc. v. Yellowstone Shopping Center, Inc.*, 21 N.Y.2d 630, 290 N.Y.S.2d 721, 237 N.E.2d 868 (1968), is an equitable device made available under New York law to prevent the cure period in a commercial real estate lease from expiring before the tenant can litigate its rights. The effect of such an injunction, which must be applied for before the cure period expires, is to stay the running of the cure period until the merits can be resolved in court. *See Post v. 120 East End Ave. Corp.*, 62 N.Y.2d 19, 24–26, 475 N.Y.S.2d 821, 823, 464 N.E.2d 125 (1984). To obtain a *Yellowstone* injunction, a tenant must show that:

(1) it holds a commercial lease; (2) it received from the landlord either a notice of default, a notice to cure, or a threat of termination of the lease; (3) it

requested injunctive relief prior to the termination of the lease; and (4) it is prepared and maintains the ability to cure the alleged default by any means short of vacating the premises.

*Graubard Mollen Horowitz Pomeranz & Shapiro v. 600 Third Ave.*, 93 N.Y.2d 508, 514, 693 N.Y.S.2d 91, 94, 715 N.E.2d 117 (1999) (quoting *225 E. 36th St. Garage Corp. v. 221 E. 36th Owners Corp.*, 211 A.D.2d 420, 421, 621 N.Y.S.2d 302, 303–4 (1st Dep't 1995)) (internal quotation marks omitted). A clue to the goal and the equitable nature of a *Yellowstone* injunction may be found in the fourth requirement listed above—that the tenant has the ability to cure the default by any means short of vacating the premises. The prejudice to the tenant that the *Yellowstone* injunction is designed to avoid is forfeiture and eviction. As described in *Post*, under the regime of *Yellowstone*,

tenants developed the practice of obtaining a stay of the cure period before it expired to preserve the lease until the merits of the dispute could be settled in court. The alternative for the tenant was to stand on his rights without correcting the violation, wait for the landlord to start summary proceedings in Civil Court and then defend against the landlord's claim in that court. If he won, well and good; if he lost he forfeited everything because the lease had terminated. The remedy for this all or nothing result was to obtain a stay to toll the running of the cure period and the expiration of the lease.

*Post*, 62 N.Y.2d at 25, 475 N.Y.S.2d at 823, 464 N.E.2d 125. As a result, courts have granted *Yellowstone* injunctions

routinely to avoid forfeiture of the tenant's interest and in doing so they accepted far less than the normal showing required for preliminary injunctive relief. An applicant rarely has been re-

quired to demonstrate a likelihood of success, irreparable injury, and that the equities favored preliminary relief as those terms are traditionally understood.

*Id.* The reason courts "rarely" required a showing of irreparable injury or an equitable balance in the tenant's favor was not that the prospect of irreparable injury and a compelling equitable case for the tenant was not necessary, but rather that they could be presumed if a commercial tenant was about to lose its lease. At a minimum, a tenant has a "substantial property interest" in its lease. *Ameurasia Int'l. Corp. v. Finch Realty Co.,* 90 A.D.2d 760, 455 N.Y.S.2d 900 (1st Dep't 1982). However, avoidance of potentially harmful forfeiture is not the purpose for which the NASD seeks a *Yellowstone* injunction here. Rather, the principal effect of granting such an injunction here would be to permit the NASD to play dog in the manger, *see Shoney's, Inc. v. Schoenbaum,* 894 F.2d 92, 99 n. 3 (4th Cir.1990) (elucidating the fable of the dog in the manger), preventing Broad Financial from leasing space that the NASD cannot and does not wish to use, to the EEOC, and thereby to strengthen its negotiating position with Broad Financial. The NASD counters that not granting the injunction would strengthen Broad Financial's negotiating position, and so it would, but not in a way that would offend *Yellowstone* and its progeny, or the rationale—avoidance of forfeiture and its consequences—for granting such injunctions.

For the above reasons, the NASD's application for a *Yellowstone* injunction is denied.