Wharton-Bickley v 388 Broadway Owners LLC (2025 NY Slip Op 00802)

Wharton-Bickley v 388 Broadway Owners LLC

2025 NY Slip Op 00802

Decided on February 11, 2025

Appellate Division, First Department

Higgitt, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 11, 2025
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick
Lizbeth González Julio Rodriguez III John R. Higgitt LlinÉt M. Rosado

Index No. 154534/23 Appeal No. 3366 Case No. 2024-00605 

[*1]Andrew Wharton-Bickley, et al., Plaintiffs-Appellants,
v
388 Broadway Owners LLC, Defendant-Respondent, Cardinal Credit IX LLC, Defendant.

Plaintiffs appeal from an order of the Supreme Court, New York County (Louis L. Nock, J.), entered on or about January 16, 2024, which denied plaintiffs' motion for a Yellowstone injunction.

Goodfarb & Sandercock, LLP, New York (Margaret B. Sandercock and Elizabeth Sandercock of counsel), for appellants.
Borah, Goldstein, Altschuler, Nahins & Goidel, P.C., New York (Paul N. Gruber of counsel), for respondent.

Higgitt, J. 

This appeal presents several issues relating to Supreme Court's denial of plaintiffs' motion for a Yellowstone injunction (First Natl. Stores v Yellowstone Shopping Ctr., 21 NY2d 630 [1968]), including whether the motion can be granted after the court's striking of the temporary restraining order (TRO) clause in plaintiffs' proposed order to show cause, which resulted in the running of the cure period and termination of the lease while plaintiffs' motion was sub judice. For the reasons that follow, we conclude that plaintiffs' timely application for Yellowstone relief should have been granted.
I.
Defendant is the owner and landlord of the building located at 388 Broadway in Manhattan. The building is an interim multiple dwelling.
In February 2021, defendant entered into a "New York Commercial Lease Agreement" with nonparty The Series Events, LLC, for unit 4E. The lease, which was to expire on July 31, 2022, provided the following authorized use of the unit: "live/work office space." Plaintiff Andrew Wharton-Bickley executed the lease on Series Events's behalf, and he and plaintiff Galen Lanier, the principal stockholders of Series Events, guaranteed Series Events's obligations under the lease. Plaintiffs thereafter resided in the unit.
In January 2023, plaintiffs submitted an application for protected occupancy status with the New York City Loft Board (see Multiple Dwelling Law art 7-C). Plaintiffs asserted in the application that they are the residential occupants of the unit, and that the unit is a registered interim multiple dwelling under the Loft Law.
II.
In April 2023, defendant served a default notice on Series Events, alleging seven lease defaults. The majority of the alleged defaults related to the use of the demised premises as an unauthorized and unlawful cabaret, banquet hall or social club where alcoholic beverages were sold and served without a license. This improper and unlawful use of the demised premises purportedly unreasonably interfered with the quiet enjoyment of other building residents. Additionally, defendant alleged that the tenants permitted excessive garbage to accumulate in common areas and installed permanent interior walls without defendant's consent. The notice specified that the alleged defaults had to be cured on or before May 19, 2023, or the lease would be terminated as of May 31, 2023.
III.
On May 18, 2023 one day before the cure period expired plaintiffs commenced this action seeking, among other things, a declaratory judgment and a Yellowstone injunction. Simultaneously [*2]with the filing of their summons and complaint, plaintiffs submitted a proposed order to show cause seeking to notice a motion for a Yellowstone injunction. The order to show cause was supported by, among other things, the affidavit of plaintiff Lanier.
In his affidavit, Lanier acknowledged that both plaintiffs were residential tenants in the unit, and that the unit was an interim multiple dwelling under the Loft Law. Lanier explained that defendant asked plaintiffs to create a commercial entity for the purposes of leasing the unit because the building did not have a residential certificate of occupancy. Lanier averred that plaintiffs did not use the unit as a nightclub or for any commercial activity and that they understood and would continue to meet their obligations with respect to the disposal of garbage. He further averred that while plaintiffs did construct interior walls within the unit, they are not permanent, and therefore were not in violation of the lease. Lanier stated that, "[w]hile we disagree with the legitimacy of the Notice [to cure] itself and the allegations made within i[t], we are willing to cure any breaches if ordered by the Court," and that plaintiffs "are prepared to cure any default, should one be established and if the Court determines there is a default, we will take any steps needed to avoid terminating our tenancy."
The proposed order to show cause contained a clause providing for a TRO tolling the cure period and enjoining defendant from terminating the lease pending the hearing of the motion. Supreme Court executed the order to show cause on May 22, 2023; however, the court struck out the TRO clause. The court gave no explanation for this critical action, which allowed the cure period to lapse.[FN1] With the cure period exhausted, defendant terminated the lease as of May 31, 2023.
Defendant thereafter opposed the motion, arguing that plaintiffs failed to demonstrate that they held a commercial lease; rather, they were personal guarantors of the lease. Defendant also argued that plaintiffs did not establish a good faith intent or ability to cure the lease defaults. Defendant posited that the cure period had lapsed and the lease was terminated, which prevented the court from granting Yellowstone relief.
IV.
Supreme Court denied plaintiffs' motion, determining:
"First, the protections afforded by a Yellowstone [i]njunction are generally reserved for commercial tenants. Here, by plaintiffs' own admission, the premises involved is under renewed registration as a dwelling and plaintiffs' own Loft Board application for Protected Occupancy Status confirms their desire to have it so. Second — and even were this court prepared to view the premises as a commercial unit for Yellowstone purposes — an essential element of Yellowstone injunctive relief is a tenant's manifest commitment to cure the defaults noticed in the landlord's notice of default. Nothing is found in the record the present record to convince the court of such [*3]a commitment" (internal quotation marks, citations, and footnote omitted).
V.
Plaintiffs maintain that Supreme Court erred in denying their motion for Yellowstone relief because, while the demised premises are registered with the Loft Board as a residential unit, plaintiffs were required by defendant to take the lease in the name of a commercial entity; the commercial tenant received a commercial lease; and defendant alleged that a commercial enterprise was operated impermissibly in the unit. Plaintiffs argue that Yellowstone relief is appropriate where, as here, the nature of the tenancy (commercial versus residential) is ambiguous so that the postjudgment cure period afforded a residential tenant under RPAPL 753 may ultimately prove to be unavailable. Plaintiffs insist that they demonstrated adequately that they are ready, able, and willing to cure the alleged lease defaults.
Defendant counters that Yellowstone relief is not available to plaintiffs because the tenancy was terminated: Supreme Court declined to grant plaintiffs TRO relief, the cure period therefore expired, and the lease was terminated. According to defendant, where there was no TRO in place and the lease was validly terminated, the court lacks the power to revive it. Additionally, defendant contends that the commercial tenant, not plaintiffs, holds the lease and that they, as strangers to the lease, therefore cannot seek Yellowstone relief. Even if they could, defendants note, plaintiffs are residential tenants who can seek relief under RPAPL 753(4), not Yellowstone relief. Lastly, defendant asserts that plaintiffs failed to demonstrate that they are willing and able to cure the alleged lease defaults.
VI.
A.
Generally, a commercial tenant confronting a notice to cure a default under the lease must effect the cure within the cure period. Where the lease default is not cured within the contractually allotted period, the landlord can terminate the lease. Enter the Yellowstone injunction, so named for the seminal 1968 Court of Appeals decision recognizing the "creative remedy for tenants . . . confronted with a tangible threat of lease termination" (Graubard Mollen Horowitz Pomeranz & Shapiro v 600 Third Ave. Assoc., 93 NY2d 508, 514 [1999]).
A Yellowstone injunction
"maintains the status quo so that a commercial tenant, when confronted by a threat of termination of its lease, may protect its investment in the leasehold by obtaining a stay tolling the cure period so that upon an adverse determination on the merits the tenant may cure the default and avoid a forfeiture" (id.).
Simply put, the Yellowstone injunction tolls the relevant cure period, thereby preventing the termination of the lease (see Post v 120 E. End Ave. Corp., 62 NY2d 19, 25-26 [1984]). With the Yellowstone injunction in place, the tenant can litigate with some confidence: if the tenant prevails in the underlying dispute with the landlord, the tenant walks away from the litigation with the lease intact; if [*4]the tenant loses the underlying dispute, the tenant can cure the demonstrated lease defaults before the expiration of the remaining cure period (id. at 25).[FN2]
In the wake of the Yellowstone decision, "tenants developed the practice of obtaining a stay of the cure period before it expired to preserve the lease until the merits of the dispute could be resolved in court" (Graubard Mollen Horowitz Pomeranz & Shapiro, 93 NY2d at 514). "[Yellowstone] injunctions have become commonplace, with courts granting them routinely to avoid forfeiture of the tenant's substantial interest in the leasehold premises" (id.). Why? Because Yellowstone relief is a unique injunction. Unlike a standard preliminary injunction that can be granted only upon a demanding three-part showing of a likelihood of success on the merits, irreparable injury, and that the equities favor the party seeking the preliminary injunction, a Yellowstone injunction is granted on "far less" a showing (Post, 62 NY2d at 25-26; see Elite Wine & Spirit LLC v Michelangelo Preserv. LLC, 213 AD3d 143, 148 [1st Dept 2023]; Heavy Cream v Kurtz, 146 AD2d 672, 673 [2d Dept 1989]).
The party seeking Yellowstone relief must demonstrate the following four elements:
"(1) It holds a commercial lease; (2) it received from the landlord either a notice of default, a notice to cure, or a threat of termination of the lease; (3) it requested injunctive relief prior to the termination of the lease; and (4) it is prepared and maintains the ability to cure the alleged default by any means short of vacating the premises" (Graubard Mollen Horowitz Pomeranz & Shapiro, 93 NY2d at 514; see Elite Wine & Spirit LLC, 213 AD3d at 148).
Three of the four elements the first, third, and fourth are contested here.
B.
Regarding the first element, that plaintiffs hold a commercial lease, "[plaintiffs] are residential tenants occupying the premises pursuant to a lease that is commercial in form" (Caldwell v American Package Co., Inc., 57 AD3d 15, 20 [2d Dept 2008]). The form of the lease and the circumstances described by Lanier relating to the tenancy demonstrate that the nature of the tenancy is ambiguous. Given that ambiguity and the equitable nature of Yellowstone relief, plaintiffs may seek Yellowstone relief to protect any interest they have in a commercial lease while challenging defendant's notice to cure (see id.). If we characterize the lease incorrectly at this juncture in an effort to prevent plaintiffs from both enjoying Yellowstone relief (which is typically reserved for commercial tenants) and having access to relief under RPAPL 753 (which is reserved for certain residential tenants), we run the risk of depriving them of any cure-related remedy. Because of the consequences of depriving a party of a Yellowstone injunction (the running of the cure period and the potential termination of the lease), we err on the side of caution in determining whether a plaintiff qualifies to seek that relief.
C.
To satisfy the third [*5]Graubard element,the plaintiff mustrequest injunctive relief prior to the termination of the lease (93 NY2d at 514).[FN3] Here, plaintiffs did just that. They submitted their proposed order to show cause for Yellowstone relief including a TRO clause staying the running of the cure period prior to the expiration of the cure period and the termination of the lease. But, in a seemingly uncommon move, Supreme Court struck the TRO clause, which led to the running of the cure period and the termination of the lease. Therefore, at the time Supreme Court adjudicated the motion for Yellowstone relief, there was no extant lease, and, as a general rule, a tenant's request for Yellowstone relief will be denied when, at the time the request is adjudicated, the lease has already been terminated (see Prince Fashions, Inc. v 60G 542 Broadway Owner, LLC, 149 AD3d 529, 529 [1st Dept 2017]; PJ Hanley's Corp. v Kiwi Pub Corp., 116 AD3d 607, 607 [1st Dept 2014], lv denied 23 NY3d 1016 [2014]; 166 Enters. Corp. v I G Second Generation Partners, L.P., 81 AD3d 154, 159 [1st Dept 2011]).
We conclude that the third element was satisfied. Plaintiffs complied with the letter of Graubard and the spirit of Yellowstone. As to the former, plaintiffs requested injunctive relief prior to the termination of the lease by submitting the proposed order to show cause, containing a TRO clause and a request for a Yellowstone injunction, to Supreme Court before the cure period expired (see Tuckahoe Realty, LLC v 241 E. 76 Tenants Corp., 200 AD3d 629 [1st Dept 2021]; Fratto v Red Barn Farmers Mkt. Corp., 144 AD2d 635, 636 [2d Dept 1988]; Physicians Planning Serv. Corp. v 292 Estates, Inc., 88 AD2d 852, 852 [1st Dept 1982]).
As to the latter, we agree with the Second Department's observation, so thoughtfully stated by Justice Lazer, that "the Yellowstone rule is equitable in nature, and in equity the erroneous denial of a timely sought temporary toll or the inadvertent failure to continue one already granted, should not result in the forfeiture of a leasehold" (Mann Theatres Corp. of Cal. v Mid-Island Shopping Plaza Co., 94 AD2d 466, 477 [2d Dept 1983], affd 62 NY2d 930 [1984]). Moreover, both our Court and the Second Department have encountered the precise situation we face here: Supreme Court's striking of a plaintiff's request for Yellowstone TRO relief, leading to the expiration of the cure period, and the termination of the lease. In those rare instances, our Court and the Second Department, upon finding that TRO relief was timely sought and erroneously denied, afforded the plaintiffs injunctive relief nunc pro tunc as of the date of the order to show cause, thereby preserving the plaintiffs' substantial property interests in their leases (see Fratto, 144 AD2d at 635; Physicians Planning Serv. Corp., 88 AD2d at 852).
We note, too, that the situation encountered by plaintiffs the unexplained denial of TRO relief in aid of a timely submitted application for a Yellowstone injunction [*6] is akin to an "improper action[] by [a] court" and "judicial inadvertence," which we have recognized justifies nunc pro tunc effect for Yellowstone relief (166 Enters. Corp., 81 AD3d at 158-159; see also SHS Baisley, LLC v Res Land, Inc., 18 AD3d 727 [2d Dept 2005]; Prince Lbr. Co. v CMC MIC Holding Co., 253 AD2d 718 [1st Dept 1998]; Mann Theatres Corp. of Cal., 94 AD2d at 476-477).[FN4]
D.
Lastly, plaintiffs satisfied the fourth element: they have demonstrated that they are prepared and maintain the ability to cure the alleged defaults by means short of vacating the premises. Lanier denied that plaintiffs are in default and asserted that plaintiffs are willing and prepared to cure any defaults established in the underlying litigation. In light of the nature of the alleged defaults, Lanier's affidavit is sufficient to establish that plaintiffs have the desire and the ability to cure any defaults, the majority of which require simply ceasing the offending conduct (see Herzfeld & Stern v Ironwood Realty Corp., 102 AD2d 737, 738 [1st Dept 1984] ["The proper inquiry is whether a basis exists for believing that the tenant desires to cure and has the ability to do so through any means short of vacating the premises."]; see also Boi To Go, Inc. v Second 800 No. 2 LLC, 58 AD3d 482 [1st Dept 2009]; TSI W. 14, Inc. v Samson Assoc., LLC, 8 AD3d 51, 52 [1st Dept 2004]).
VI.
Based on the foregoing, we conclude that plaintiffs' motion for a Yellowstone injunction should have been granted.
Accordingly, the order of the Supreme Court, New York County (Louis L. Nock, J.), entered on or about January 16, 2024, which denied plaintiffs' motion for a Yellowstone injunction, should be reversed, on the law and the facts, without costs, the motion granted, and the injunctive relief effective nunc pro tunc as of May 18, 2023.
Order, Supreme Court, New York County (Louis L. Nock, J.), entered on or about January 16, 2024, reversed, on the law and the facts, without costs, the motion granted, and the injunctive relief effective nunc pro tunc as of May 18, 2023.
Opinion by Higgitt, J. All Concur.
Renwick, P.J., Gonzalez, Rodriguez, Higgitt, Rosado, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 11, 2025

Footnotes

Footnote 1: Defendant submitted papers opposing the TRO clause on the basis that because plaintiffs claimed that the demised premises was their residence, the premises had not been put to a commercial use and plaintiffs were not entitled to Yellowstone relief. Defendant argued, too, that plaintiffs should not benefit from equity in light of the unlawful conduct they engaged in giving rise to the lease defaults. Because Supreme Court gave no reason for striking the TRO clause, we cannot know whether the court agreed with one or both of defendant's objections, or struck the clause for some other reason.

Footnote 2: Of course, if the tenant does not or cannot cure the defaults by the expiration of the remaining cure period, the lease is subject to termination.

Footnote 3: Subsequent appellate case law has demanded that the request for injunctive relief be made prior to the expiration of the cure period (see Korova Milk Bar of White Plains, Inc. v PRE Props., LLC, 70 AD3d 646, 647 [2d Dept 2010]; Prince Fashions, Inc. v 542 Holding Corp., 15 AD3d 214, 215 [1st Dept 2005]). Plaintiffs' request for Yellowstonerelief was made prior to the expiration of the cure period and, necessarily therefore, before the lease was terminated.

Footnote 4: We recognize that generally a trial court is under no obligation to provide an explanation for why it chose to strike or add language in a proposed order to show cause, although the court is free to do so. Because of the unique function of a Yellowstone injunction and the regularity with which courts provide TRO relief in aid of Yellowstone injunctions, a trial court should strongly consider providing an explanation when it strikes a TRO clause from a timely submitted order to show cause seeking a Yellowstone injunction.