170 Tillary Corp. v Gold Tillary Realty, LLC (2025 NY Slip Op 06680)

170 Tillary Corp. v Gold Tillary Realty, LLC

2025 NY Slip Op 06680

Decided on December 3, 2025

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 3, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
FRANCESCA E. CONNOLLY
CARL J. LANDICINO
JAMES P. MCCORMACK, JJ.

2022-09138
2023-03363
 (Index No. 510354/22)

[*1]170 Tillary Corp., respondent-appellant,
v
Gold Tillary Realty, LLC, etc., appellant-respondent.

Greenberg Traurig, LLP, New York, NY (Paul H. Schafhauser of counsel), for appellant-respondent.
Rosenberg & Estis, P.C., New York, NY (Norman Flitt, Travis S. Roher, and Laura A. Raheb of counsel), for respondent-appellant.

DECISION & ORDER
In an action for declaratory and injunctive relief, (1) the defendant appeals, and the plaintiff cross-appeals, from an order of the Supreme Court, Kings County (Leon Ruchelsman, J.), dated September 19, 2022, and (2) the defendant appeals from an order of the same court dated February 27, 2023. The order dated September 19, 2022, insofar as appealed from, granted the plaintiff's motion for a Yellowstone injunction (see First Natl. Stores v Yellowstone Shopping Ctr., 21 NY2d 630). The order dated September 19, 2022, insofar as cross-appealed from, upon granting that branch of the plaintiff's motion which was for a Yellowstone injunction insofar as it applied to a 15-day notice to cure dated December 23, 2021, conditioned the issuance of the injunction upon the satisfaction of certain stated conditions. The order dated February 27, 2023, denied the defendant's motion to vacate the order dated September 19, 2022, or, in the alternative, for leave to reargue its opposition to the plaintiff's motion for a Yellowstone injunction.
ORDERED that the cross-appeal from so much of the order dated September 19, 2022, as upon granting that branch of the plaintiff's motion which was for a Yellowstone injunction insofar as it applied to the 15-day notice to cure dated December 23, 2021, conditioned the issuance of the injunction upon the satisfaction of certain stated conditions is dismissed as academic, without costs or disbursements; and it is further,
ORDERED that the appeal from so much of the order dated February 27, 2023, as denied that branch of the defendant's motion which was for leave to reargue its opposition to the plaintiff's motion for a Yellowstone injunction is dismissed, without costs or disbursements, as no appeal lies from an order denying reargument (see Federal Natl. Mtge. Assn. v Vivenzio, 229 AD3d 510); and it is further,
ORDERED that the order dated September 19, 2022, is modified, on the law, by deleting the provision thereof granting that branch of the plaintiff's motion which was for a Yellowstone injunction insofar as it applied to certain late fees sought in a 15-day notice demanding payment of rent dated December 23, 2021, and substituting therefor a provision denying that branch [*2]of the motion; as so modified, the order dated September 19, 2022, is affirmed insofar as appealed from, without costs or disbursements; and it is further,
ORDERED that the order dated February 27, 2023, is affirmed insofar as reviewed, without costs or disbursements.
In 1999, the plaintiff (hereinafter the tenant) and the defendant (hereinafter the landlord) entered into a long-term commercial lease agreement (hereinafter the lease) for a term of 48 years for the land and building located at 170 Tillary Street in Brooklyn (hereinafter the leased premises). The lease also provided, inter alia, that the tenant was responsible for all real estate taxes and water and sewer charges. Although the lease referred to the real estate taxes and water and sewer charges as "additional rent," the tenant was to pay such sums "by delivering [a] certified check to Landlord payable to appropriate city agency."
The lease also required the tenant to procure certain insurance naming the landlord as an additional insured, to cause any of the tenant's contractors who performed work on the leased premises to obtain certain insurance naming the landlord as an additional insured, and to indemnify and hold harmless the landlord against, among other things, "any and all claims . . . occurring within or about the [leased premises] based upon any act or omission . . . of Tenant or any of its employees, agents, contractors or invitees," as well as "all losses, settlements, damages, costs, charges, counsel fees, and other expenses incurred in or in connection with each such claim or action or proceeding brought thereon."
In June 2019, the tenant contracted with Liftco Elevator Group (hereinafter Liftco) to act as the general contractor for a project involving certain elevator-related construction at the leased premises (hereinafter the project). Liftco then subcontracted with NYC Elevator Repair Services, Corp. (hereinafter NYC Elevator) to furnish all labor for the project.
In June 2020, NYC Elevator employees allegedly were injured while working on the project. Subsequently, two NYC Elevator employees commenced personal injury actions against, among others, the tenant and the landlord.
The landlord served the tenant with a "FIFTEEN (15) DAY NOTICE DEMANDING PAYMENT OF RENT" dated December 23, 2021 (hereinafter the 2021 rent demand). The amounts listed in the 2021 rent demand included real estate taxes, water and sewer charges, and late fees. In addition, the landlord served the tenant with a "FIFTEEN (15) DAY NOTICE TO CURE" also dated December 23, 2021 (hereinafter the 2021 default notice). The tenant's alleged defaults included, among other things, failing to obtain the requisite insurance and to name the landlord as an additional insured therein and failing to cause the tenant's contractors to obtain the requisite insurance. The parties agreed to extend the cure dates with respect to the 2021 rent demand and the 2021 default notice until April 8, 2022, subject to certain conditions.
In April 2022, the tenant commenced this action against the landlord. The complaint, inter alia, sought a declaration that the late fees sought in the 2021 rent demand either were waived, uncollectible as unenforceable penalties, or charged in violation of Executive Order 202.28. Upon commencement of this action, the tenant moved for a Yellowstone injunction with respect to the 2021 rent demand and the 2021 default notice (see First Natl. Stores v Yellowstone Shopping Ctr., 21 NY2d 630). The Supreme Court issued a temporary restraining order enjoining the landlord from, inter alia, taking any steps to terminate the lease or the tenant's tenancy and tolling the tenant's time to cure its purported defaults as set forth in the 2021 rent demand and the 2021 default notice.
Subsequently, in an order dated September 19, 2022 (hereinafter the September 2022 order), the Supreme Court granted the plaintiff's motion for a Yellowstone injunction with respect to the 2021 rent demand and the 2021 default notice. However, the court conditioned the issuance of the Yellowstone injunction insofar as it applied to the 2021 default notice, in effect, upon the tenant demonstrating that it was ready, willing, and able to cure its alleged defaults. The landlord appeals, and the tenant cross-appeals, from the September 2022 order.
The parties both sent letters with exhibits to the Supreme Court, arguing as to whether the tenant had complied with the insurance and indemnification-related requirements of the lease. In or around December 2022, approximately two months after the parties sent their letters with exhibits to the court, the landlord moved to vacate the September 2022 order or, in the alternative, for leave to reargue its opposition to the tenant's motion for a Yellowstone injunction. In an order dated February 27, 2023 (hereinafter the February 2023 order), the court denied the landlord's motion. In the February 2023 order, the court also found that the tenant satisfied the directives of the September 2022 order. The landlord appeals from the February 2023 order.
At the outset, the tenant's cross-appeal from so much of the September 2022 order as, upon granting that branch of its motion which was for a Yellowstone injunction insofar as it applied to the 2021 default notice, conditioned the issuance of the injunction upon the satisfaction of certain stated conditions must be dismissed as academic, because the issues raised in the tenant's cross-appeal were resolved in the February 2023 order (see Matter of Alyssa C. v Samuel L.W., 216 AD3d 1091).
"The purpose of a Yellowstone injunction is to enable a tenant confronted by a notice of default, a notice to cure, or a threat of termination of the lease to obtain a stay tolling the running of the cure period so that after a determination of the merits, the tenant may cure the defect and avoid a forfeiture of the leasehold" (Top-All Varieties v Raj Dev. Co., 151 AD2d 470, 471; see M.B.S Love Unlimited v Jaclyn Realty Assoc., 215 AD2d 537, 538). A party requesting a Yellowstone injunction must demonstrate that "(1) it holds a commercial lease; (2) it received from the landlord either a notice of default, a notice to cure, or a threat of termination of the lease; (3) it requested injunctive relief prior to the termination of the lease; and (4) it is prepared and maintains the ability to cure the alleged default by any means short of vacating the premises" (Graubard Mollen Horowitz Pomeranz & Shapiro v 600 Third Ave. Assoc., 93 NY2d 508, 514 [internal quotation marks omitted]; see 225 Butler Assoc., LLC v 255 Butler, LLC, 208 AD3d 829, 831).
With respect to the September 2022 order, the Supreme Court properly granted the Yellowstone injunction insofar as it applied to the real estate taxes and water and sewer charges sought in the 2021 rent demand. Generally, a statutory rent demand that serves as a prerequisite to a nonpayment proceeding cannot form the basis of a Yellowstone injunction (cf. Purdue Pharma v Ardsley Partners, 5 AD3d 654; Lexington Ave. & 42nd St. Corp. v 380 Lexchamp Operating, 205 AD2d 421, 423-424; Runes v Douglas Elliman-Gibbons & Ives, 83 AD2d 805, 805). However, such rationale relies on the fact that nonpayment proceedings carry their own cure provisions under RPAPL 751(1), "obviating the need for Yellowstone relief" (Top-All Varieties v Raj Dev. Co., 151 AD2d at 471; see RPAPL 751[1]; M.B.S. Love Unlimited v Jaclyn Realty Assoc., 215 AD2d at 538).
Here, even if the real estate taxes and the water and sewer charges sought in the 2021 rent demand were "additional rent" pursuant to the lease, it is uncertain whether such sums could be collected in a nonpayment proceeding and, more importantly, whether the tenant could take advantage of the protections afforded to a tenant under RPAPL 751(1) because, pursuant to the lease, the tenant must pay those sums "by delivering [a] certified check to Landlord payable to appropriate city agency." As "the Yellowstone rule is equitable in nature" (Mann Theatres Corp. of Cal. v Mid-Island Shopping Plaza Co., 94 AD2d 466, 477, affd 62 NY2d 930), in the interest of ensuring the tenant has the opportunity to defend its substantial property interest in the lease, the Supreme Court properly granted that branch of the tenant's motion which was for a Yellowstone injunction insofar as it applied to the real estate taxes and water and sewer charges sought in the 2021 rent demand.
However, the Supreme Court erred in granting that branch of the tenant's motion which was for a Yellowstone injunction insofar as it applied to the late fees sought in the 2021 rent demand. Here, there is no dispute that the late fees sought in the 2021 rent demand were "additional rent" under the lease. Accordingly, there was no need for Yellowstone relief with respect to the late fees, as the 2021 rent demand was the statutory prerequisite for a nonpayment proceeding in which the tenant will be afforded the protections of RPAPL 751(1) (see M.B.S. Love Unlimited v Jaclyn Realty Assoc., 215 AD2d at 538; Top-All Varieties v Raj Dev. Co., 151 AD2d at 471).
Further, the Supreme Court properly denied that branch of the landlord's motion which was to vacate so much of the September 2022 order as granted that branch of the plaintiff's [*3]motion which was for a Yellowstone injunction insofar as it applied to the 2021 default notice. A motion to vacate or modify a Yellowstone injunction "'is addressed to the sound discretion of the court and may be granted upon compelling or changed circumstances that render continuation of the injunction inequitable'" (255 Butler Assoc., LLC v 255 Butler, LLC, 208 AD3d at 831, quoting 456 Johnson, LLC v Maki Realty Corp., 177 AD3d 829, 830). Here, contrary to the landlord's contentions, the letters from the tenant's insurance providers did not render the tenant's insurance coverage or commitment to indemnification inadequate under the lease. Furthermore, because the tenant and Liftco both procured proper insurance pursuant to the lease, the tenant did not commit an incurable breach.
The parties' remaining contentions either are without merit, are improperly raised for the first time on appeal, are based on matter dehors the record, or need not be reached in light of our determination.
DILLON, J.P., CONNOLLY, LANDICINO and MCCORMACK, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court